# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION
### CIVIL ACTION NO. 1:13CV-000119-HBB

**ALICE M. SULLIVAN**                                                              **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                             **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Alice M. Sullivan ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 19) and Defendant (DN 20) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 16). By Order entered October 29, 2013 (DN 17), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

On September 27, 2010, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 160-164, 165-171). Plaintiff alleged that she became disabled on December 1, 2007, as a result of open heart surgery and left leg problems (Tr. 179, 181). On January 11, 2012, Administrative Law Judge Hortensia Haaversen ("ALJ") conducted a video

hearing from Baltimore, Maryland (Tr. 9, 23-25). Plaintiff appeared in Bowling Green, Kentucky, and was represented by attorney Nancy O. Roberts (Tr. 9, 23-25). Also present and testifying was Stephen P. Davis, a vocational expert (Tr. 9, 23-25).

In a decision dated May 16, 2012, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 9-17). Before addressing each step, the ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2014 (Tr. 11). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 1, 2007, the alleged onset date (Tr. 11). At the second step, the ALJ determined that Plaintiff's coronary artery disease status post two-vessel coronary artery bypass grafting with benign hypertension, ongoing tobacco abuse, and obesity are "severe" impairments within the meaning of the regulations (Tr. 12). Notably, at the second step, the ALJ determined although Plaintiff had a sever fracture of her left tibia in May 2010 this impairment could not be a "severe" impairment within the meaning of the regulations because it did not last twelve months (Tr. 12). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 12).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work because she may sit 8 hours, stand 2 hours, and walk one hour; she needs the option to sit and stand, she may occasionally bend, stoop, push, pull, and reach overhead but never kneel, stoop, crouch, or crawl; she will need to alternate positions every 35 to 45 minutes and may occasionally be able to grip with her hands (Tr. 12-13). Additionally, the ALJ found that Plaintiff is unable to perform any past relevant work (Tr. 15).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 16-17). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 16-17). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 1, 2007, through the date of the decision, May 16, 2012 (Tr. 17).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 22). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3, 4).

CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

1)   Is the claimant engaged in substantial gainful activity?

2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her  ability to do basic work activities?

3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)   Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)   Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Before addressing each of Plaintiff's arguments the undersigned will globally address an issue that pertains to all of her arguments.  Specifically, Plaintiff has mistakenly used the abuse of discretion standard in each of her challenges to the ALJ's findings (DN 19, Memorandum at Pages 5-19).  Apparently, Plaintiff is not aware that 42 U.S.C. §405(g) governs judicial review of her claims.  This statute limits the Court's review to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.  Gayheart v. Commissioner, 710 F.3d 365, 374 (6th Cir. 2013) (citing

42 U.S.C. § 405(g); <u>Cole v. Astrue</u>, 661 F.3d 931, 937 (6th Cir. 2011)). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Secretary of Health and Human Serverices</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)). This means, "[a] reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." <u>Gayheart</u>, 710 F.3d at 374 (emphasis added) (citing <u>Colvin v. Barnhart</u>, 475 F.3d 727, 730 (6th Cir. 2007)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Secretary of Health and Human Services</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)). In sum, the Court will not apply the abuse of discretion standard when it addresses each of Plaintiff's challenges to the ALJ's findings. Instead, the Court will assess whether each challenged finding is supported by "substantial evidence" and whether the ALJ applied the correct legal standard.

Plaintiff's Challenges to Finding No. 2

a

Plaintiff argues the ALJ erred in finding December 1, 2007 is the alleged onset date (DN 19, Memorandum at Pages 6-7, 8). Relying on comments the ALJ made during the hearing, Plaintiff asserts the ALJ should have used May 15, 2009, as the onset date (DN 19, Memorandum at Pages 6-7, 8).

Defendant acknowledges the onset date in Finding No. 2 is different from the May 15, 2009 date the ALJ mentioned during the hearing (DN 20, Fact and Law Summary at Page 5). Defendant points out the onset date actually should have been the day after the May 12, 2009 Administrative Law Judge decision denying Plaintiff's earlier application for benefits (DN 20, Fact and Law Summary at Page 5 at foot note 2). Defendant asserts this error is harmless because the ALJ's decision (Tr. 11-17) shows she considered the period from December 1, 2007 through May 16, 2012, and substantial evidence support the ALJ's decision for the pertinent period (DN 20, Fact and Law Summary at Page 5-7).

Both applications for benefits allege a December 1, 2007 onset of disability (Tr. 162, 165). During the administrative hearing on January 11, 2012, the ALJ observed that Plaintiff filed a previous application for benefits and it had been denied by an Administrative Law Judge on May 14, 2009 (Tr. 23, 25). Therefore, the ALJ indicated the onset date "we're going to consider in this case is May 15, 2009," the day after the previous denial (Tr. 25). On May 16, 2012, the ALJ issued a decision (Tr. 9-17). In the first paragraph of the decision, the ALJ noted that both of Plaintiff's applications allege her disability began on December 1, 2007 (Tr. 9). In Finding No. 2, the ALJ concluded that December 1, 2007, is "the alleged onset date" (Tr. 11). This finding is supported by substantial evidence in the record because that is the date Plaintiff's applications allege she became unable to work (Tr. 162, 165). Further, Plaintiff did not amend the alleged onset date before the ALJ rendered her decision.[1]

_____

[1] Plaintiff's purported request to amend occurred on June 12, 2012, almost a month after the ALJ rendered her decision on May 16, 2012 (Tr. 17, 254). Thus, Plaintiff did not amend the alleged onset date before the ALJ rendered her decision.

The previous Administrative Law Judge decision was issued on May 12, 2009 (DN 20, Fact and Law Summary at Page 5, foot note 2). Therefore, the ALJ's decision should have addressed whether Plaintiff has been under a disability from May 13, 2009, through the date of the decision, May 16, 2012. Instead, the ALJ's decision addressed whether Plaintiff has been under a disability from December 1, 2007, through the date of the decision, May 16, 2012 (Tr. 9-17). However, the ALJ's error is harmless because May 13, 2009 through May 16, 2012 is included within the time frame addressed in her decision (Tr. 9-17).

In an effort to show harm, Plaintiff asserts pushing the onset date back to 2007 results in her being classified as a younger individual (age 18-49) (DN 19, Memorandum at Page 8). Plaintiff points out she is now age 51 and, therefore, "she is less able to perform job functions as the ALJ states 'through the date of this decision'" (DN 19, Memorandum at Page 8, citing Tr. 17). Plaintiff's argument is specious at best because she would have been classified as a younger person (under age 50) regardless of whether the ALJ used December 1, 2007[2], May 13, 2009, or May 15, 2009[3] as the onset date. 20 C.F.R. §§ 404.1563(c), 416.963(c). Further, Plaintiff's age on December 27, 2013, is irrelevant to the question of whether she has been under a disability through May 16, 2012, the date of the ALJ's decision.

Plaintiff has made general allegations about a "lack of" and an "abuse of" due process as a result of the ALJ's confusion about her onset date (DN 19, Memorandum at Pages 7, 8). Plaintiff has not explained why the ALJ's purported confusion about her onset date has resulted in a due

---

[2]Plaintiff was 44 years old on December 1, 2007 (Tr. 16).

[3]Plaintiff was 46 years old on May 13, 2009.

process violation.[4]  Further, Plaintiff has twice cited <u>Golberg v. Kelly</u>, 397 U.S. 254 (1970)[5] and the

Fifth and Fourteenth Amendments to the Constitution without any explanation why this case and

these constitutional amendments substantiate her general allegations of a due process violation (DN

19, Memorandum at Pages 7, 8).  Moreover, Plaintiff has not cited a single case involving a similar

fact scenario where a federal court has concluded a due process violation occurred.   It is

well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort

at developed argumentation, are deemed waived."  <u>United States v. Layne</u>, 192 F.3d 556, 566 (6th

Cir.1999) (quoting <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-96 (6th Cir.1997)); <u>see</u> <u>also</u> <u>Brindley</u>

<u>v. McCullen</u>, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully

developed and argued to be waived."); <u>Rice v. Commissioner of Social Security</u>, 2006 WL 463859,

*2 (6th Cir. 2006).  Here, the undersigned concludes that Plaintiff has waived her due process claim

---

[4]Certainly, an applicant for Social Security benefits has a Fifth Amendment property
interest in those benefits.  <u>Flatford v. Chater</u>, 93 F.3d 1296, 1304-1305 (6th Cir. 1996).  Further,
due process requires that a claimant's hearing be "fundamentally fair."  <u>Richardson v. Perales</u>,
402 U.S. 389, 401-402 (1971).  An evaluation of a due process claim requires consideration of
the following three factors:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards[;] and finally, the
> Government's interest, including the function involved and the
> fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail.

<u>Flatford</u>, 93 F.3d at 1306 (citations omitted).

[5]<u>Goldberg v. Kelly</u>, 397 U.S. 254 (1970), holds that the Due Process Clause of the
Fourteenth Amendment requires a full evidentiary hearing before a recipient of certain
government benefits is deprived of such benefits.  The record clearly indicates Plaintiff did
receive a full and fair evidentiary hearing before the ALJ denied Plaintiff's applications for
benefits.

because all she has done is refer to it in a perfunctory manner. Notably, Plaintiff cannot demonstrate a due process violation because the ALJ's purported confusion regarding the onset date does not pose a "risk of an erroneous deprivation" of Plaintiff's interest in Social Security disability benefits as the result would have been the same even if the ALJ had used a May 13 or 15, 2009 onset date. Flatford v. Chater, 93 F.3d 1296, 1306 (6th Cir. 1996).

Finally, Plaintiff asserts "[t]he ALJ must not further abuse [her] by not allowing [her] to amend her onset date to the last date she worked at The Cabin, May 15, 2009, because that was the date she could no longer work" (DN 19, Memorandum at Page 8). This argument is confusing because during and after the hearing Plaintiff did not ask the ALJ to amend her onset date to May 15, 2009 (Tr. 25-26). Plaintiff's purported request to amend the onset date was actually in a letter brief she sent to **the Appeals Council**, not the ALJ[6] (Tr. 4, 254). Moreover, Plaintiff did not make an affirmative request to change the onset date from December 1, 2007 to May 15, 2009 (Tr. 254). Instead, Plaintiff merely expressed a willingness to amend the onset date if the Social Security Administration was concerned about the amount of back pay she would receive (Tr. 254). More importantly, the Court's review here is limited to deciding whether to uphold, modify, or reverse the ALJ's decision because it became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. §§ 404.955(b), 404.981, 422.210.

---

[6]The purported request to amend was made in a letter brief dated June 12, 2012 (Tr. 254). Thus, Plaintiff would have made her purported request almost a month after the ALJ rendered her decision on May 16, 2012 (Tr. 17, 254).

b

Plaintiff also disputes the ALJ's finding that she has not engaged in substantial gainful activity since December 1, 2007 (DN 19, Memorandum at Page 7). Plaintiff contends she engaged in substantial gainful activity in 2009 because she earned $9,434.21 while working as a cook at the Cabin restaurant[7] (DN 19, Memorandum at Page 7).

Defendant asserts the ALJ appropriately found Plaintiff's work in 2009 through May 2010 did not rise to the level of substantial gainful activity because of extensive accommodations by her employer (DN 20, Fact and Law Summary at Page 4). Further, Defendant asserts that Plaintiff has not shown how the alleged error prejudiced her claim (DN 20, Fact and Law Summary at Pages 4-5).

The regulations define substantial gainful activity as work that:

> (a) Involves doing significant and productive physical or mental duties; and
>
> (b) Is done (or intended) for pay or profit.

20 C.F.R. §§ 404.1510, 416.910. A further explanation of what the Commissioner means by substantial gainful activity reads as follows:

> Substantial gainful activity is work activity that is both substantial and gainful:
>
> (a) Substantial work activity. **Substantial work activity is work activity that involves doing significant physical or mental**

---

[7]Notably, Plaintiff relies on the affidavits of Greg Schilling (Tr. 256-257) and Judy Hittison (Tr. 258-260) to challenge the ALJ's finding regarding the credibility of Plaintiff's testimony about the extensive accommodations she received while working as a cook at the Cabin restaurant (DN 19, Memorandum at Page 7). The Appeals Council considered this new evidence, but declined review (Tr. 1-3, 4, 256-257, 258-260). Therefore, the district court cannot consider this new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. Cline v. Commissioner of Social Security, 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

**activities.** Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. §§ 404.1572, 416.972 (emphasis added).

Plaintiff worked as a cook at the Cabin restaurant in 2009 and through May 10, 2010 (Tr. 32-33). Plaintiff earned $9,434.21 in 2009 and $3,100 in 2010 (Tr. 32-33, 175). Thus, the evidence showed her work activity was gainful. Yet, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 1, 2007 (Tr. 11). In the discussion that follows, the ALJ explained that Plaintiff's work as a cook did not involve significant physical activities because of the accommodations she received from her employer and her fiancé who also worked at the restaurant[8] (Tr. 11-12). In short, the ALJ found Plaintiff's work as a cook in 2009 and through May 15, 2010 did not satisfy the substantial work activity requirement in the regulations (Tr. 11-12). Therefore, the undersigned concludes the ALJ's finding on the substantial gainful activity issue is supported by substantial evidence in the record and comports with applicable law. In sum, there is no merit to Plaintiff's challenges to Finding No. 2.

---

[8]Although the ALJ did not find fully credible Plaintiff's testimony about the extensive accommodations she received, the ALJ did find some of Plaintiff's testimony credible and relied on it to conclude her work as a cook did not involve significant physical activities (Tr. 11-12).

Plaintiff's Challenges to Finding No. 4

Plaintiff disagrees with the ALJ's determination that she does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (DN 19, Memorandum at Pages 8-12). Specifically, Plaintiff believes the ALJ should have found she met listings 4.04 (ischemic heart disease) and 3.03 (asthma) in light of the medical evidence in the record (DN 19, Memorandum at Pages 8-12). Plaintiff argues the ALJ penalized her for an inability to pay for medical care when the ALJ found she had limited contact with her cardiologist, Dr. Emanuele (DN 19, Memorandum at Page 10). Defendant argues the ALJ's findings are supported by substantial evidence in the record and comport with applicable law (DN 20, Memorandum at Pages 7-10).

Notably, at the third step in the sequential evaluation process, Plaintiff has the burden of demonstrating she has an impairment that meets or medically equals a listing in Appendix 1. See, 20 C.F.R. §§ 404.1520(d), 416.920(d); Burgess v. Secretary of Health and Human Serv's., 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1, the medical records regarding Plaintiff's impairments must satisfy both the diagnosis and severity requirements for the listing. Social Security Ruling 96-5p; 20 C.F.R. §§ 404.1525(d), 416.925(d); Hale v. Secretary of Health and Human Serv's., 816 F.2d 1078, 1083 (6th Cir. 1984). If the impairment does not meet the severity requirements of a listing, then the ALJ must look to the opinions of the state agency medical advisors for guidance on the issue of whether the medical findings are at least equal in severity and duration to the listing findings. 20 C.F.R. §§ 404.1526(a) and (b), 416.926(a) and (b); Social Security Ruling 96-5p; Deters v. Secretary of Health, Educ. and Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

To meet listing 3.03 Asthma, Plaintiff's medical records must satisfy one of the following requirements:

> A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A;
>
> Or
>
> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.03.

The assessment will focus only on 3.03A because Plaintiff does not argue she satisfies listing 3.03B. During the hearing, Plaintiff testified she is 4 feet 11 ½ inches (59.5 inches) tall and weighs 190 pounds (Tr. 31). For Plaintiff to satisfy listing 3.03A, she must have had an FEV1 equal to or less than 1.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.02A, Table I. Plaintiff has not satisfied this requirement because pulmonary function testing in April 2008 showed a base FEV1 of 1.56 (Tr. 265). Clearly, substantial evidence supports the ALJ's finding that the requirements of 3.02 are not satisfied because the results achieved on pulmonary function testing do not meet the listed criteria (Tr. 12). Therefore, the undersigned concludes the ALJ's findings are supported by substantial evidence in the record and fully comport with applicable law. In sum, there is no merit to Plaintiff's claim that she meets listing 3.03A.

To meet listing 4.04, Plaintiff's medical records must satisfy the following requirements:

> 4.04 Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3–4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:

A. Sign-or symptom-limited exercise tolerance test demonstrating at least one of the following manifestations at a workload equivalent to 5 METs or less:

1. Horizontal or downsloping depression, in the absence of digitalis glycoside treatment or hypokalemia, of the ST segment of at least -0.10 millivolts (–1.0 mm) in at least 3 consecutive complexes that are on a level baseline in any lead other than aVR, and depression of at least -0.10 millivolts lasting for at least 1 minute of recovery; or

2. At least 0.1 millivolt (1 mm) ST elevation above resting baseline in non-infarct leads during both exercise and 1 or more minutes of recovery; or

3. Decrease of 10 mm Hg or more in systolic pressure below the baseline blood pressure or the preceding systolic pressure measured during exercise (see 4.00E9e) due to left ventricular dysfunction, despite an increase in workload; or

4. Documented ischemia at an exercise level equivalent to 5 METs or less on appropriate medically acceptable imaging, such as radionuclide perfusion scans or stress echocardiography.

OR

B. Three separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12–month period (see 4.00A3e).

OR

C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

1. Angiographic evidence showing:

a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

b. 70 percent or more narrowing of another nonbypassed coronary artery; or

c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

e. 70 percent or more narrowing of a bypass graft vessel; and

2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 CFR Pt. 404, Subpt. P, App. 1, Listing 4.04.

The ALJ found the criteria of listing 4.04 (ischemic heart disease) was not met because there was no evidence of ischemia associated with specified findings on exercise testing (4.04A); no evidence of three separate ischemic episodes each requiring revascularization (4.04B); and no evidence of coronary artery disease with specified angiographic findings (4.04C) (Tr. 12). Plaintiff is not alleging she meets listings 4.04A or 4.04B (DN 19, Memorandum at pages 8-12). Rather, Plaintiff is asserting she meets listing 4.04C because there is evidence in the record showing coronary artery disease with specified angiographic findings (DN 19, Memorandum at Pages 8-12).

Plaintiff is relying on a December 3, 2007, cardiac catherization report from Dr. Emanuele (Tr. 316, 317) to satisfy the specified angiographic findings in listing 4.04C (DN 19, Memorandum at Pages 8-9). This report does show narrowing of Plaintiff's left main coronary artery that is estimated at more than 50% (Tr. 316). However, Plaintiff also underwent bypass grafting surgery in 2007 (Tr. 335, 337) and she has failed to submit sufficient medical evidence to determine the chronology of the two procedures. This is important information because the regulations indicate, **"[w]hen you have had revascularization, we will not use the pre-operative findings to assess**

**the current severity of your coronary artery disease under 4.04C**..." 20 CFR Pt. 404, Subpt. P, App. 1, Listing 4.00E9h. Thus, if this cardiac catherization report sets forth pre-operative findings then Plaintiff's reliance on the report is misplaced. More importantly, the ALJ considered the post-operative medical records which includes Plaintiff's subjective complaints and the objective test results (e.g., EKG from March 2001; chest x-rays from January 2008, January 2009, April 2010, and March 2011; a June 5, 2009, echo cardiogram; a chest radiograph from October 2010; Doppler and MMode/2D testing in June 2009) (Tr. 12, 14-15). From the medical evidence the ALJ concluded Plaintiff did not meet the 4.00E3-4.00E7 criteria for listing 4.04C (Tr. 12, 14-15). The undersigned concludes substantial evidence in the record supports the ALJ's finding. Notably, Plaintiff's reliance on the June 5, 2009, echo cardiogram report is misplaced because it categorizes her 50-55% left ventricle ejection fraction as "grossly normal" (Tr. 312-313). Inasmuch as the post-operative medical records do not satisfy the criteria of listing 4.04C, there is no reason to address Plaintiff's contention about marked restrictions in activities of daily living and her accusation that the ALJ penalized her for being unable to regularly see Dr. Emanuele. Clearly, the ALJ's findings are supported by substantial evidence in the record and comport with applicable law. In sum, there is no merit to Plaintiff's claim that she meets listing 4.04.

Finally, Plaintiff makes a general assertion that either she "has a combination of impairments or this is a violation of the Plaintiff's due process rights" (DN 19, Memorandum at Page 11). Again, she cites Golberg v. Kelly, 397 U.S. 254 (1970) and the Fifth and Fourteenth Amendments to the Constitution without any explanation why they substantiate her general assertion about a due process violation (DN 19, Memorandum at Page 11). It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Commissioner of Social Security, 2006 WL 463859, *2 (6th Cir. 2006). Here, the undersigned concludes that Plaintiff has waived her due process claim because all she has done is refer to it in a perfunctory manner.

Plaintiff's Challenges to Finding No. 5

Finding No. 5 sets forth the ALJ's residual functional capacity assessment. The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Plaintiff asserts the ALJ should have assigned greater weight to the January 2012 opinion of her treating cardiologist, Dr. Emanuele (DN 19, Memorandum at Page 15, 17-18). Notably, Plaintiff contends the ALJ should not have considered how frequently Dr. Emanuale examined her

because she could not afford more frequent office visits (DN 19, Memorandum at Pages 14-15).

Defendant argues the ALJ's findings regarding the weight accorded to Dr. Emanuele's opinion are supported by substantial evidence in the record (DN 20, Fact and Law Summary at Pages 10-13). Further, Defendant asserts the regulations direct the ALJ to consider the frequency of examination when assigning weight to the medical source opinion (DN 20, Fact and Law Summary at Page 13).

There is no dispute that Dr. Emanuele is a treating source under the regulations. The regulations indicate that treating source opinions must receive "controlling weight" when two conditions are met: (1) the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the medical opinion "is not inconsistent with other substantial evidence in ...[the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir. 2013). If the Administrative Law Judge does not give the treating physician's medical opinion controlling weight, "then the opinion is weighed based on the length, frequency, nature, and extent of the treating relationship, ... as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. Id. (citing 20 C.F.R. § 404. 1527(c)(2)-(6)). Further, the Administrative Law Judge must provide "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004). Notably, "[t]hese reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Gayheart, 710 F.3d at 376 (citing Social

Security Ruling 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d 544).

In a letter dated January 11, 2012, Dr. Emanuele expressed the following opinion to Plaintiff's counsel:

> Per your request, I can state that Mrs. Alice Sullivan has been my patient for a few years. She underwent Coronary Artery Bypass Graft surgery and after that has been unable to work on jobs which require frequent lifting.

(Tr. 414). The ALJ considered the medical evidence in the record, including Dr. Emanuele's treatment notes, before assigning weight to the above quoted opinion (Tr. 14-15). The ALJ expressed the following reasons for weight she assigned to Dr. Emanuele's opinion:

> The undersigned places minimal weight on the January 2012 opinion of Tullio Emanuele, M.D. (Exhibit 12F), who stated that due to her coronary artery bypass graft surgery, she has not been able to work on jobs which require frequent lifting. This opinion does not have controlling weight as specified under Social Security Ruling 96-2p because it was not consistent with his own medical records. For example, the claimant exhibited normal signs on her June 2009 visit with Doppler and MMode/2D testing (Exhibit 3F/6-8). July 2010 testing found similar results (Exhibit 9F). In addition, while the claimant has a treating relationship with Dr. Emanuele since 2007, they have had limited contact with one another, without visits in 2008 and 2011. Similarly, the limitations are not specific and only frequent lifting, not specifying an amount. The claimant quoted Dr. Emanuele in saying that she could lift over 10 pounds (Exhibit 14E/8). The claimant also stated that she was able to work provided certain accommodations that when named to the vocational expert, were attainable in the positions named below. Because the claimant does not exhibit the extreme exacerbations in the record that Dr. Emauele alleged in his medical source statement, his opinion is not supported by nor is consistent with the overall medical evidence of record.

(Tr. 15).

The undersigned concludes the ALJ has provided "good reasons" for why Dr. Emanuele's opinions failed to meet the first prong of the "controlling weight" test. Specifically, the ALJ found Dr. Emanuele's opinions regarding Plaintiff's condition were inconsistent with the objective test results set forth within the doctor's own treatment records. Additionally, the ALJ expressed "good reasons" for assigning minimal weight to Dr. Emanuele's opinion. Specifically, the ALJ concluded the limitations were not supported by substantial evidence in the record in light of the objective test results in Dr. Emanuele's own treatment records. Contrary to Plaintiff's assertion, the ALJ did not penalize her for an inability to pay for more frequent visits to the doctor (DN 19, Memorandum at Pages 14-15). Rather, the ALJ appropriately considered the length of the treatment relationship and the frequency of examination because these are factors the regulations indicate will be considered in deciding the weight that will be given to a medical opinion. 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). In sum, the ALJ's findings are supported by substantial evidence in the record and comport with applicable law.

Plaintiff argues the ALJ erred in not giving greater weight to DDS medical consultant (Tr. 65-75, 76-85) whose limitations included standing 2 hours per day, limits with pushing and pulling in the arms and legs, limits to occasional stooping and occasional overhead reaching (DN 19, Memorandum at Page 15). Apparently, Plaintiff fails to realize that the limitations expressed by the State agency medical consultant are actually less restrictive than those set forth in the ALJ's residual functional capacity assessment. Thus, contrary to Plaintiff's belief, the limitations expressed by the DDS medical consultant do not substantiate her statements regarding the limitations imposed by her impairments.

Notably, medical opinions from examining and non-examining physicians are "never assessed for 'controlling weight.'" Gayheart, 710 F.3d at 376 (citation omitted). Instead, the Administrative Law Judge "weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability..." Id. (citing 20 C.F.R. § 404.1527(c)(2)). Further, other factors that tend to support or contradict the medical opinion may be considered in assessing the medical opinion. Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).

On December 3, 2010, non-examining State agency medical consultant, Dr. Saranga, prepared a residual functional capacity assessment that expressed the following exertional limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of 2 hours; sit (with normal breaks) for a total of about 6 hours in an 8 hour workday; and occasionally push and/or pull with the upper and lower extremities (Tr. 71, 81). Dr. Saranga also expressed the following postural limitations: climbing ramps/stairs, balancing, kneeling, crouching, and crawling is unlimited; and stooping is limited to occasionally (Tr. 71-72, 81-82). Additionally, Dr. Saranga expressed the following manipulative limitations: reaching any direction (including overhead) bilaterally is limited; and handling (gross manipulation), fingering (fine manipulation), and feeling is unlimited (Tr. 72, 82). Finally, Dr. Saranga indicated Plaintiff had no visual, communicative, or environmental limitations (Tr. 72, 82).

In pertinent part, the ALJ's decision reads as follows:

> The undersigned places minimal weight to the opinion of the state agency (DDS) medical consultant (Exhibits 3A and 4A) who stated that the claimant could perform light work with limits on standing to 2 hours per day, limits with pushing and pulling in the arms and legs, and limits to occasional stooping and occasional overhead reaching. While this opinion was supported by and consistent with the medical evidence of the record at the time of the opinion, new evidence has entered the record that shows that the claimant has further limitations

than what the DDS consultant originally assessed, as seen at Exhibits 9F through 12F and with the claimant's testimony that she could stand for 15 to 20 minutes at a time before needing rest, that she could not walk long distances and has memory problems. She cannot sit very long as her chest and back would hurt and after a while, she might be able to work at it to grip but she could not grip anything because her hands swelled, tingled, and went numb. She could not kneel, crawl, bend, or stoop but could stand up at a copy machine for 15 to 20 minutes per day and would need more than two breaks per day. The claimant's RFC was modified as stated above with the additional limitations to assure that all possible limitations named in the evidence are accommodated.

(Tr. 15). Here, the ALJ's decision indicates he applied the factors in §§ 404.1527(c) and 416.927(c)--supportability, consistency, specialization--when weighing Dr. Saranga's opinions. Further, the ALJ provided a more than adequate explanation why she assigned minimal weight to Dr. Saranga's opinion. Thus, the ALJ's findings regarding the weight accorded to Dr. Saranga's opinion are supported by substantial evidence in the record and comport with applicable law.

Next, Plaintiff argues the ALJ erred in not including her memory problems, her not wanting to be around people, and her inability to walk one hour per day in the residual functional capacity assessment (DN 19, Memorandum at Page 13). Further, Plaintiff challenges the ALJ's finding that her statements about the severity of her conditions were not credible (DN 19, Memorandum at Page 14). Plaintiff contends that Dr. Emanuele's medical records support her claims of pain and other symptoms (DN 19, Memorandum at Pages 17-18).

In assessing Plaintiff's residual functional capacity the ALJ appropriately considered her subjective allegations and made credibility findings (Tr. 13-15). 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p. Notably, Plaintiff's statement that she is experiencing disabling pain and other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be

expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether Plaintiff suffers from debilitating pain and other symptoms, the two-part test set forth in <u>Duncan v. Secretary of Health and Human Serv's.</u>, 801 F.2d 847, 853 (6th Cir. 1986), applies. Consistent with this two-part test, the ALJ examined whether there is objective medical evidence of an underlying medical condition and determined the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 14, 15). <u>Id.</u> Notably, in making this determination the ALJ assigned minimal weight to Dr. Emanuele's opinion of January 11, 2012 (Tr. 14-15). Because the reported pain and other symptoms suggested impairments of greater severity than could be shown by objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to the degree of pain and other symptoms alleged (Tr. 14-15). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

For example, the ALJ considered Plaintiff's level of daily activity which is a factor that may be considered in determining the extent to which her pain and other symptoms are of disabling severity (Tr. 13-15). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); <u>Bogle v. Sullivan</u>, 998 F.2d 342, 348 (6th Cir. 1993); <u>Blacha v. Secretary of Health and Human Serv's.</u>, 927 F.2d 228, 231 (6th Cir. 1990). Further, the frequency that Plaintiff sought treatment for her allegedly disabling heart condition is a factor the ALJ may consider in assessing Plaintiff's subjective complaints (Tr. 13-15). 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Another factor the ALJ appropriately considered is whether there were any inconsistencies in the evidence and the extent to which there are any conflicts between Plaintiff's statements and the rest of the evidence (Tr. 13-15). 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent she testified (Tr. 14-15). In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility. Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the Plaintiff, the conclusion of the ALJ, who has the opportunity to observe the Plaintiff's demeanor, "should not be discharged lightly." Houston v. Secretary of Health and Human Serv's., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes the ALJ's findings regarding Plaintiff's credibility are supported by substantial evidence and fully comport with applicable law. Additionally, the undersigned concludes the ALJ's findings regarding Plaintiff's residual functional capacity are supported by substantial evidence and comport with applicable law.

Finally, Plaintiff challenges the ALJ's comment "with limited evidence to support this claim, the undersigned has to assume that the claimant underwent medical improvement" (DN 19, Memorandum at Page 13; Tr. 14). Plaintiff argues the ALJ erred when she made this assumption because Drummond v. Commissioner, 126 F.3d 837 (6th Cir. 1997) holds the Social Security Administration cannot reexamine issues previously determined in the absence of new and additional evidence or changed circumstances (DN 19, Memorandum at Page 13). Citing the medical evidence from Dr. Emanuele and the two affidavits[9] she submitted to the Appeals Council, Plaintiff asserts

_____

[9]Apparently, Plaintiff reasons since the Appeals Council considered these two affidavits but declined her request for review (Tr. 1-3, 4), the affidavits are part of the record that the Court must consider in determining whether the final decision of the Commissioner is supported by substantial evidence (DN 19, Memorandum at Page 13). Plaintiff's belief, however, is contra to well-established case law in the Sixth Circuit. When the Appeals Council considers new

her medical condition has not improved since the earlier decision issued by a different Administrative Law Judge (DN 19, Memorandum at Page 13).

The undersigned observes that Plaintiff's argument is the product of taking the ALJ's comment out of context and not understanding the holding in <u>Drummond</u>. Essentially, <u>Drummond</u> holds in the absence of new and material evidence establishing an improvement in a claimant's condition, the subsequent Administrative Law Judge is bound by the **residual functional capacity** findings of a previous Administrative Law Judge. <u>Id.</u> at 842-843. The disputed comment is the final sentence in the following paragraph:

> The claim in front of the undersigned was based on heart problems and while the claimant has a history of heart problems, treatment after the alleged onset date showed that the claimant exhibited steady improvement to where the symptoms were not showing on the hearing date. Chest x-rays from January 2008, January 2009, and April 2010 were all stable (Exhibit 4F/1), showing that the heart condition has stayed stable with no acute findings for the alleged disability period. A chest radiograph from October 2010 showed no evidence of acute cardiopulmonary disease (Exhibit 4F/10). **With limited evidence to support this claim, the undersigned has to assume that the claimant underwent medical improvement.**

(Tr. 14) (emphasis added).

Clearly, the ALJ identified new and material evidence showing a medical improvement in Plaintiff's heart condition (Tr. 14). Additionally, the ALJ pointed out there was limited evidence

_____

evidence, but declines review, the district court cannot consider the new evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. <u>Cline v. Commissioner of Social Security</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993). In sum, the undersigned cannot consider these two affidavits in deciding the merits of Plaintiff's argument.

to support Plaintiff's claim that her condition had deteriorated[10] (Tr. 14). Therefore, it was reasonable for the ALJ to assume Plaintiff's heart condition underwent medical improvement. Notably, although there is new and material evidence establishing an improvement in Plaintiff's heart condition, the ALJ's residual functional capacity assessment actually imposed more limitations than those set forth in the May 2009 Administrative Law Judge decision. Therefore, the holding in Drummond does not apply here. Additionally, the undersigned has reviewed the record and concludes the ALJ's findings regarding Plaintiff's heart condition are supported by substantial evidence and comport with applicable law.

Plaintiff's Challenge to Finding No. 6

In Finding No. 6, the ALJ determined Plaintiff is unable to perform any of her past relevant work (Tr. 15). The ALJ's explanation reads as follows:

> The claimant has past relevant work as a cook, housekeeping, pick packager, and preparation cook. The vocational expert during the previous Administrative Law Hearing testified that all of the past relevant work was at the medium exertional level, exceeding the claimant's then RFC. As the RFC for this decision has more limits, the past relevant work becomes less attainable for the claimant. Accordingly, the claimant is unable to perform past relevant work.

(Tr. 16).

Included in Plaintiff's objections to Finding No. 5 is an argument that actually pertains to Finding No. 6 (DN 19, Memorandum at Pages 12-13). Specifically, Plaintiff asserts the holding in

---

[10]Contrary to Plaintiff's assertion, Dr. Emanuele's treatment records do not support her claim. Further, the ALJ accorded minimal weight to the January 2012 opinion of Dr. Emanuele because it was inconsistent with his own medical records. Thus, there was limited evidence to support Plaintiff's claim that her heart condition had deteriorated.

<u>Dennard v. Secretary of Health and Human Services</u>, 907 F.2d 598, 600 (6th Cir. 1990) should not be applied to her case because her claim involves an unadjudicated period and more medical records (DN 19, Memorandum at Pages 12-13). Apparently, Plaintiff fails to understand the holding in <u>Denard</u> actually protects her with regard to future applications for disability benefits.

Essentially, <u>Denard</u> holds that prior determinations of a claimant's ability to perform past relevant work are binding for future applications for disability benefits. 907 F.3d at 600. Here, the Administrative Law Judge decision in May 2009 set forth a finding that Plaintiff was unable to perform any past relevant work. The ALJ in this case honored that earlier determination (Tr. 15-16). Therefore, the ALJ's finding is supported by substantial evidence in the record and comports with the applicable law, including the holding in <u>Denard</u>.

Plaintiff's Challenge to Finding No. 9

Finding No. 9 pertains to the fifth step in the sequential evaluation process. At the fifth step, the Commissioner has the burden of demonstrating there exists a significant number of jobs in the national economy that the claimant can perform, given her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); <u>Allen v. Califano</u>, 613 F.2d 139, 145 (6th Cir. 1980); <u>Wyatt v. Secretary of Health and Human Services</u>, 974 F.2d 680, 684 (6th Cir. 1992); <u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990). When a claimant's age, education, previous work experience and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §404.1569, §416.969; Grid Rule 200.00; <u>Born v. Secretary of Health and Human</u>

<u>Services</u>, 923 F.2d 1168, 1174 (6th Cir. 1990);<u>Moon v. Sullivan</u>, 923 F.2d 1175, 1181 (6th Cir. 1990).

However, if a claimant's age, education, previous work experience and residual functional capacity

do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using

the Grid Rule as a framework in the decision making process and must make a non-guideline

determination based on the testimony of a vocational expert. 20 C.F.R. §§404.1566(e), 416.966(e);

<u>Born</u>, 923 F.2d at 1174; <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777, 779 (6th

Cir. 1987); <u>Kirk v. Secretary of Health and Human Services</u>, 667 F.2d 524, 531, 535 (6th Cir. 1981),

<u>cert. denied</u>, 461 U.S. 957 (1983). For example, if the claimant suffers from an exertional and a non-

exertional impairment then the Grids may be used only as a framework to provide guidance for

decision making. 20 C.F.R. §§404.1569a(d) and 416.969a(d);20 C.F.R. Part 404, Subpart P,

Appendix 2, §200.00(e); <u>Abbot v. Sullivan</u>, 905 F.2d 918, 926-927 (6th Cir. 1990); <u>Cole v. Secretary

of Health and Human Services</u>, 820 F.2d 768, 771 (6th Cir. 1987); <u>Kirk v. Secretary of Health and

Human Services</u>, 667 F.2d 524, 528-529 (6th Cir. 1981).

Finding No. 9 reads as follows:

> Transferability of job skills is not material to the determination of
> disability because using the Medical-Vocational Rules as a frame
> work supports a finding that the claimant is "not disabled," whether
> or not the claimant has transferable job skills (See SSR 82-41 and 20
> CFR Part 404, Subpart P, Appendix 2).

(Tr. 16). The ALJ was referring to Grid Rule 202.18 (Tr. 16) which directs a finding of not disabled

regardless of whether the claimant has transferable job skills. 20 C.F.R. Pt. 404, Subpt. P, Appendix

2, Grid Rule 202.18).

Plaintiff challenges Finding No. 9 by arguing "[i]t is material that [she] does not have

transferable job skills, because there are fewer jobs either by erosion of jobs or less types of jobs that

are light and unskilled" (DN 19, Memorandum at Pages 15-16). The undersigned concludes that Plaintiff's argument is, at best, specious. The ALJ merely used Grid Rule 202.18 as a framework in the decision making process and then went on to make a non-guideline determination based on the testimony of the vocational expert (Tr. 16-17).

Plaintiff's Challenge to Finding No. 10

In Finding No. 10, the ALJ relied on the testimony of the vocational expert to conclude there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given her age, education, work experience, and residual functional capacity (Tr. 16-17). Plaintiff argues that her "modifications of the ALJ's hypothetical and the vocational expert's answers should have resulted in no jobs available decision, and determination of disability" (DN 19, Memorandum at Pages 18). The undersigned concludes there is no merit to Plaintiff's argument.

Again, the ALJ's residual functional capacity assessment is supported by substantial evidence in the record and comports with applicable law. Further, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, because the vocational expert's testimony is based on a hypothetical question that accurately portrays the physical limitations set forth in the ALJ's residual functional capacity assessment. Varley v. Secretary of Health and Human Serv's., 820 F.2d 777, 779 (6th Cir. 1987); Bradford v. Secretary, Dep't. of Health and Human Serv's., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam). By contrast, the vocational expert's testimony in response to Plaintiff's hypothetical questions would not constitute substantial evidence to support a finding of disabled because the Plaintiff's hypothetical

questions do not accurately portray the physical limitations in the ALJ's residual functional capacity assessment.

Plaintiff's Challenge to Finding No. 11

In Finding No. 11, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 1, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g))" (Tr. 17). Plaintiff challenges this finding by arguing it is inconsistent with Dr. Emanuele's medical records and January 2012 opinion (DN 19, Memorandum at Pages 16-17). For the reasons set forth above, Plaintiff's reliance on Dr. Emanuele's medical records and opinion are misplaced. Further, the undersigned has reviewed the record and concludes the ALJ's finding is supported by substantial evidence in the record and comports with applicable law.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel

30